CATHERINE E. PUTNAM v. CITY OF ST. PAUL.

February 2, 1899.

Nos. 11,449—(243).

### City of St. Paul—Annual Expenditure for Schools—Sp. Laws 1891, c. 36 —Title of Act.

The provisions in Sp. Laws 1891, c. 36, which take away from the governing body of the independent school district of the city of St. Paul the right to determine the amount of its annual expenditures, and vest that power in the city council, are not invalid upon the ground that the subject of the legislative act was not expressed in its title, as required by Const. art. 4, § 27.

### Same—Powers of Board of School Inspectors.

Under the provisions of said chapter, the board of school inspectors have no power or authority to create any indebtedness against the city, or to pledge its faith or credit, for the ensuing school year, until the annual appropriation is made by the council. All persons dealing with the board are bound by these restrictive provisions, including teachers appointed by the board.

### Same—Annual Appropriation for Salaries of Teachers.

Such part of the amount annually appropriated and set apart by the council for the compensation of teachers is so appropriated and set apart for the entire teaching force, and not for a part. If, at or prior to the end of the school year, the amount appropriated is found to be insuffi-

cient to pay full salaries to teachers, it is the duty, and it is within the power, of the board to discharge teachers, and thus curtail expenses.

### Same—Payment of Salaries Monthly—Deficiency.

The amount appropriated by the council, in 1894, for teachers' salaries, was believed by the board to be insufficient to pay full salaries for the entire year, and therefore it was resolved that all salaries should be paid monthly in full, and, if there should be a deficiency, each teacher should be paid pro rata for the last month. Of this resolution the teachers were notified before commencing work, at the opening of the schools, and they were also notified that such as were dissatisfied with this condition could decline to enter upon their duties. Those whose interests are in issue here commenced to teach, were paid in full and for each month up to June 1, taught through that month, and were then paid pro rata and equitably for that month, which payments were accepted; all of the amount appropriated by the council being thus distributed and paid. *Held*, that an action to recover the difference between what was paid and what would have been paid if the appropriation had been sufficient to meet all demands cannot be maintained by a teacher.

Appeal by plaintiff from a judgment of the district court for Ramsey county in favor of defendant, entered pursuant to the order of Kelly, J. Affirmed.

*Stiles W. Burr*, for appellant.

Upon the proposition that the provisions of Sp. Laws 1891, c. 36, which take away from the governing body of the school district the right to determine the amount of its expenditures and vest that power in the city council, are void under Const. art. 4, § 27, because as to them the title of the act is defective and misleading, counsel cited the following authorities: Simard v. Sullivan, 71 Minn. 517; State v. Sullivan, 72 Minn. 126; State ex rel. Bazille v. Sullivan, 73 Minn. 378; State ex rel. Wagener v. Sullivan, 73 Minn. 382; Palmer v. Bank of Zumbrota, 72 Minn. 266; State v. Oftedal, 72 Minn. 498; Winona & St. P. R. Co. v. Waldron, 11 Minn. 392 (515); State v. Kinsella, 14 Minn. 395 (524); Mississippi & R. R. Boom Co. v. Prince, 34 Minn. 79; Falkner v. Dorland, 54 N. J. L. 409; Town v. Fishkill, 22 Barb. 634; State v. Bankers, 23 Kan. 499; Adams v. San Angelo, 86 Tex. 485; Dorsey's Appeal, 72 Pa. St. 192; In re Breene, 14 Colo. 401; Montgomery v. State, 88 Ala. 141; Witzmann v. Southern, 131 Mo. 612; State v. Board, 22 Nev. 399; Ryno v. State,

58 N. J. L. 238; People v. Allen, 42 N. Y. 404; Philadelphia v. Market, 161 Pa. St. 522; Percival v. Cowychee, 15 Wash. 480.

*James E. Markham* and *Carl Taylor*, for respondent.

COLLINS, J.

Action by plaintiff, a teacher in the public schools of the city of St. Paul during the year preceding June 30, 1895, to recover for herself and for four other teachers whose claims have been assigned to her, alleged unpaid portions of their salaries. We are clearly of the opinion that plaintiff cannot recover, and that the conclusion of the trial court to that effect must be sustained.

The law which governs the board of inspectors of the school district in question, upon which board the detail of management is devolved, is somewhat novel. Sp. Laws 1891, c. 36. The city is created an independent district, and the duty and power of providing funds for the expenses incident to the maintenance of all city schools is placed in the hands of the city council. This is practically the limit of the authority conferred upon the council, but as to this it seems to have been made supreme. By section 6, it is expressly provided that the expense of such schools shall not in any year exceed the amount of money appropriated and set apart therefor by such council, and its right to appropriate and set apart money for school purposes is made to depend upon the amount which will be derived by an annual tax levy, not exceeding $2\frac{1}{2}$ mills on the dollar. And in the same section it is enacted that the board of inspectors shall have no power or authority to create any indebtedness against the city, or to pledge its faith or credit, until after the council shall have acted, and shall have fixed and set apart the amount to be expended in the school year, and then only to the extent of the amount so fixed and set apart. To impress this provision upon the members of the board, a violation of it is made a misdemeanor, punishable by imprisonment in the county jail. If plaintiff's claim could be enforced she would, unwittingly perhaps, subject all members of the board who participated in the excessive expenditure to the unpleasant penalty above mentioned.

By section 3 it is provided that the school year shall extend from September 1 to July 1 and that it shall be the duty of the board of

inspectors to report to the mayor, on or before June 1 in each year, among other things, the monthly compensation that the board of inspectors recommend to be paid to each of the teachers, or class of teachers, of the public schools, and all other employees, for the following school year. It is the duty of the mayor to transmit this report, with his approval or disapproval, to the common council, and the council fixes, by ordinance, the amount of money which the board of inspectors are allowed for the purpose of maintaining the schools for the ensuing year. Section 3 also provides that monthly payments shall be made to teachers, and they are to serve during the pleasure of the inspectors. All salaries are to be fixed annually. It is further provided in section 3 that,

"As far as practicable, it shall be the duty of said inspectors in each year to appoint, not later than June fifteenth (15th), all the teachers for the next ensuing school year, and notify each teacher thereof."

It is obvious that, under these provisions, it is the duty of the board to make its report to the mayor as early as June 1 in each year, and in this report to state facts which will indicate what amount of money is needed, in the opinion of the board, properly to equip and conduct the schools for the school year commencing September 1 following. The facts detailed inform the mayor and the members of the council why this amount is needed and how it is to be expended. The duty is then on the mayor to transmit this report, approved or disapproved, or with recommendations, to the council, which is to be convened for the purpose of acting upon the same within 10 days; that is, on or before June 10. The plan is to have the council act, determine and set apart the amount to be expended for school purposes as early as June 10. This is evident from the provision last above quoted, which makes it the duty of the inspectors, "as far as practicable," to appoint teachers not later than June 15, when read in connection with that part of section 6 which prohibits the board of inspectors from binding the city on any contract until after the amount to be expended has been set apart by ordinance, and of which all parties dealing with the board must take notice.

On June 15, 1894, the board appointed a large number of teach-

ers, including all but one of those whose claims are in issue here, and that one seems to have been appointed August 28. The yearly salary of one of these persons was fixed by the board at $750. As to the others, the salaries were declared to be according to previously prepared schedules. The appointees were notified in writing of their selection, and each accepted in the same manner, agreeing to report to the superintendent at a teachers' meeting to be held on September 4. A rule of the board, known to the appointees, also required all teachers to report at, and be present at, this meeting. The plaintiff and two of her assignors were at this meeting; the others were not. At the time of the appointments made June 15, the board had not made its report to the mayor, nor was this report in his hands until June 30. It was not acted on by the council until August 18, and then the amount estimated as needed for teachers' salaries was reduced $17,800. It is conceded that the amount appropriated was sufficient to cover full salaries for the appointees of June 15, but was insufficient to meet the salaries in full of all teachers actually appointed and employed during the school year.

At the meeting held August 28, 1894, at which one of plaintiff's assignors was appointed, as before stated, the action of the city council, reducing the appropriation recommended in the amount of $17,800, was discussed, and it was resolved that individual salaries should not be reduced at that time, but that if there should be a deficiency, as was expected, it should be met by a general pro rata cut in all salaries for the last month of the school year. The president of the board was instructed to notify all teachers of the situation, and of the action of the board in respect to an anticipated deficiency at the end of the year; and at the teachers' meeting on September 4, before mentioned, the president gave public notice of the exact condition in which the board was placed, and what it had resolved to do should it appear, as the end of the year approached, that full salaries could not be paid for the last month. And all teachers not satisfied with the proposition were notified that the right to resign was theirs. This was a few days before the schools opened.

Plaintiff and her assignors commenced work and taught during

the year, being paid in full for each month up to the month of June. April 3, 1895, the board, at a regular meeting, resolved that there should be deducted pro rata from the salaries to be paid for the month of June an amount equal to the deficiency, whatever it might be. July 15 the board apportioned the entire balance of the money, all that remained of the appropriation after paying full salaries up to the month of June, among all of the teachers who served during that month, pro rata, in strict accordance with its resolution adopted prior to the day in September on which these teachers began work, of which resolution they had been informed at the meeting, and then paid this pro rata sum or share to each of the teachers who so served. It is not questioned but that all of the amount appropriated by the council for teachers' salaries was distributed and paid out fairly and equitably among those who taught during the month of June, but the contention is that plaintiff, in her own right and as assignee, is entitled to recover the difference between what was paid and what would have been paid if the appropriation had equaled the demands.

On these facts, it seems clear that plaintiff cannot recover, for either of the following reasons:

1. The appointment of four of the persons whose claims are here involved, and the fixing of their salaries, was premature, and in no manner bound the city, for the reason that on June 15, when the board acted, no appropriation had been made by the council. Until such appropriation is made, the action of the board is of no validity.

2. The board is authorized to appoint teachers for the school year, and to fix salaries, but this authority is subject to the conditions found in the law under which such appointments are made. All teachers are to serve during the pleasure of the board, and those who did serve were fully advised of the exact condition of the fund out of which salaries were to be paid, prior to the day they entered upon their duties. None of those whose demands are now before us declined to commence to teach when informed that, in all probability, salaries for the month of June would be reduced because the amount appropriated by the council would prove insufficient. Instead of discharging a part of the teaching force prior

to June 1, as the board had the right to do, and thus reducing expenses so that those remaining could be paid in full, all of the teachers were retained, and the amount to be expended was curtailed by reducing pro rata the sums paid for the last month's salaries. Every teacher consented to this, by implication, when accepting work with full knowledge of the situation, and this consent is as binding as if reduced to writing. All accepted positions, entered upon the work, taught during the full term, were paid, and accepted payment, in accordance with the resolution adopted by the board weeks before their services were demanded, of which resolution they were notified, and at the same time advised of their right to resign, or to decline positions, if the existing conditions were unsatisfactory. They are not now in position to repudiate their part of this transaction, and, in an indirect way, to compel a violation of the law by the board, and the payment by the city of a sum in excess of the annual appropriation made by the council in 1894.

3. The contention of plaintiff's counsel seems to be that, when the city authorities acted and set apart for salaries a sum sufficient to pay the salaries of teachers already appointed by the board, the amount thus set apart became a sort of "trust fund," for the sole use and benefit of teachers already appointed. We have seen that these appointments were all premature and invalid, but, if this were not so, the contention is without merit. The amount appropriated is for the payment of all teachers who may be employed by the board for the school year in question. The supposition is that the board will "cut its garment according to its cloth." The sum appropriated is for the entire school year. It is also for the entire teaching force, not for a part. None of the teachers can be excluded, for all are supposed to be needed, no matter when designated or appointed to positions. The person who commenced work last is as essential to the proper conduct of the schools, and as much entitled to compensation, as the one who renders services on the first day of school. In the case at bar, the appointments made, and the salaries fixed, prior to the action of the council, were wholly conditional, and every appointee was bound to take notice of the law in respect to this matter. Every one knew that the action of the board was provisional, and subject to the control of

the council in making appropriations. Before the work of the year began, the council had acted, and every teacher then or previously designated was informed of the proposition of the board.

As said by the trial court, every teacher acquiesced in the plan, and that is the end of the case, unless certain provisions found in chapter 36, supra, are unconstitutional, as urged by counsel, and this fact will permit plaintiff to recover. It is counsel's position on this point that the provisions in the chapter which take away from the governing body of the school district the right to determine the amount of its own expenditures, and vest that power in the city council, which has no other power in the whole management of the district, are invalid, because, as to such provisions, the subject of the legislative act, now chapter 36, was not expressed in its title, as required by Const. art. 4, § 27, and, in fact, that the title is really deceptive and misleading. Just where this would leave counsel and his client, if we should agree with him, we are not prepared to say, but we are of the opinion that there is nothing in the claim.

In substance, the act was entitled an act to abolish the board of education of the city, to repeal certain laws concerning said board, providing that the city shall constitute a single and independent school district, and as such exercise all of the powers heretofore vested in the board of education. The constitutional provision (article 4, § 27) is to have a practical and liberal construction, for it is manifest that a law may embrace but one subject, and yet include many provisions and details, which would be inconvenient and unnecessary to refer to in the title. It is sufficient if the title fairly and reasonably expresses the subject, or is sufficiently broad and comprehensive to include the several provisions relating to, or connected with, the subject. And whatever provisions of the law are germane to the title of the act are proper to be incorporated into the body thereof. A single and independent school district is created, according to this title, a previously existing board of education wiped out, and its powers vested in the new creation. In an act with such a title, we should expect to find the details of the management, and to find named the agencies or channels through which the new district might act. If it be germane to the subject

of creating a school district to authorize it to raise money for school purposes, we should expect to find the method provided for and the amount to be raised specified. These details, such as naming the agencies through which the newly-created body shall act, granting authority to raise money by taxation, stating how the necessary amount shall be determined, and other matters, are not required to be set forth in the title of the legislative enactment.

Judgment affirmed.

CANTY, J.

I concur in the result. By section 3 of the act, it was the duty of the board, after the appropriation by the city council, to fix definitely the compensation for each class of teachers, to be paid "for the ensuing year," which compensation "shall be paid monthly." This was not done, but a resolution was passed by which the board resolved to fix such compensation after the school year closed, and in the meantime the teachers were paid a certain definite salary for each month except the last. This method of procedure was wholly irregular. If the fact that the board had, each month except the last, ordered a certain fixed sum to be paid as monthly compensation, could be taken alone, it might amount to a fixing of the compensation for the whole year at the same monthly rate. But this fact cannot be taken alone. The board passed this irregular and illegal resolution, and the teachers acquiesced in it. The board had power to fix legally the salary for the year, and might have done so if the teachers had not acquiesced in the illegal resolution. Under these circumstances, the teachers are estopped to take advantage of the irregular and illegal way in which the salaries were fixed. See Bowe v. City of St. Paul, 70 Minn. 341, 345, 73 N. W. 184, and the case there cited.