ERIK E. FRISK AND OTHERS v. BOARD OF EDUCATION
OF THE CITY OF DULUTH.
DULUTH TEACHERS ASSOCIATION, INTERVENOR.[1]

February 17, 1956.

Nos. 36,654, 36,655.

[1]Reported in 75 N. W. (2d) 504.

*Paul Sterling,* for appellants-respondents Erik E. Frisk and others.

*Palmer, Hood, Crassweller & McCarthy,* for respondent-appellant The Board of Education of the City of Duluth.

*Lewis, Hammer, Heaney, Weyl & Halverson,* for intervenor-respondent.

*Donald M. Fraser, Louise A. Herou,* and *Larson, Loevinger, Lindquist, Freeman & Fraser,* for amicus curiae.

NELSON, JUSTICE.

Plaintiffs commenced this action in the District Court of St. Louis County for a determination of their status under the Minnesota

Teacher Tenure Act,[2] as employees of defendant, the Board of Education of the City of Duluth, as vocational teachers in what is now an approved area vocational-technical school located in the city of Duluth, embracing an area which includes the counties of Cook, Lake, Carlton, Pine, Aitkin, and the south one-quarter of St. Louis County. They seek a declaratory judgment[3] adjudging that they are, in their present employment as such teachers, entitled to all benefits naturally accruing to teachers under the Teacher Tenure Act, with full classification under its provisions. They further seek a money judgment against defendant for each respective plaintiff for unpaid salary because of having been kept in a separate classification during the period of service as vocational teachers outside of the basic salary schedule adopted by the board as a guide for fixing salaries and entering into annual contracts with the members of the regular teaching staff of the public schools of the city and the resolution adopted by the board August 1, 1946, for annual adjustment of the contract salaries of the members of the regular teaching staff based on the latest cost of living index available on August 1 of each year. Judgment is sought for the difference in what the plaintiffs were paid under the salary agreements at the Salter Area Vocational-Technical School during their period of service and the salaries paid to the regular teachers in the Duluth public school system and any cost of living adjustments made to them over the same period. They further seek an order that the board of education be adjudged to pay to the teachers retirement fund such amounts as they might be entitled to and should have been paid for their benefit to that fund. The Duluth Teachers Association intervened in the action. The plaintiffs herein began their respective employments with the board of education and have served as follows:

Erik E. Frisk, employed continually since January 21, 1946;
Arvid A. Anderson, employed continually since November 1, 1946;
P. M. Olsen, first employed July 29, 1946, until July 29, 1951,

[2] M. S. A. 130.22 to 130.32.
[3] See, M. S. A. c. 555.

re-employed November 1, 1952, and employed continually since that date;

R. E. O'Donnell, employed continually since November 1, 1948;

Robert V. Haigh, employed continually since February 1, 1949;

Ray S. Pearson, employed continually since June 1, 1946.

■ There seems to be little if any dispute as to the main facts involved. The defendant is organized under Sp. L. 1891, c. 312, and governed by its provisions and the laws pertaining to independent school districts of the state. Its territory is coextensive with the city of Duluth. It holds and controls all public school grounds, buildings, and equipment within the city and conducts the schools therein, and for that purpose it employs, for such compensation as may be fixed and agreed upon by the board of education, a superintendent of the schools, principals, assistants, teachers and other help needed. It contracts for all other necessary requirements to fully and completely operate the public school system. For each year it is authorized to levy, within stated limits, a tax upon the assessed valuation of all property within the city, and this provides the main funds out of which its contract obligations and others must be met. The board in its administration of the school system must take into account the tax levy made and its other sources of revenue provided by law in entering into the obligations which it must meet during each school year.

■ The present Salter Area Vocational-Technical School and its system of vocational training had its commencement in response to the demand for vocational training by discharged veterans of World War II. In response to that demand a director of vocational training was appointed. Subsequently he was authorized to hire teachers, some of whom are now plaintiffs in this action. All of the teachers from the beginning, including the plaintiffs, were hired under oral agreements including wage provision agreed upon and finally approved by the defendant. Competence as a tradesman was the primary requisite to the position. A formal educational background was not required. These facts and other administrative differences distinguish these teachers employed as vocational teachers at the

Salter school from those employed as vocational teachers in the Duluth regular public school system.

From the beginning students at the Salter Vocational School were generally of an advanced age as compared to typical high school students; further, they were not required to take academic work; they did not pursue diplomas; and no credits were given toward high school graduation as a result of completing the vocational courses at the Salter school either before or after it was established as an area vocational-technical school.

The Teacher Tenure Act provides that it shall apply to all "regularly employed" teachers in cities of the first class. Duluth is a city of the first class; plaintiffs were regularly employed as vocational teachers at the Salter school by its board of education. Although the contracts with plaintiffs were made in the light of possible demotions and lay-offs because of uncertain enrollment, it is clear from the evidence that they suffered no forced lay-offs. Despite the somewhat tentative nature of the contracts, they were in continuous effect from the date of hiring to the date of the commencement of this action. This court has construed the term "regularly employed" to apply to substitute part-time teachers on the theory that they were continuously on call for duty. McSherry v. City of St. Paul, 202 Minn. 102, 277 N. W. 541. In view of this liberal construction of the provisions in question, it would follow that plaintiffs were regularly employed.

The tenure act provides that subsequent to a 3-year probationary period a teacher shall acquire tenure and shall then be entitled to a hearing on questions of discharge or demotion. The plaintiffs have satisfied the 3-year requirement, and the question which now presents itself is: If they have tenure, are they entitled to have the nature of their tenure determined? Plaintiffs contend that they have acquired tenure in the school system as a whole. A more reasonable construction of the act, however, would be that plaintiffs have acquired tenure only in their positions as special vocational instructors at the Salter Area Vocational-Technical School. The decision

of this court in State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544, is authority for that construction.

The tenure act reads in terms of "position," and this court in the above-cited case stated that "position" refers to rank, grade, or station in the school system. A contrary finding that their position applied to the whole public school system of the city would allow academically unqualified teachers to insist on tenure rights in an area that the board of education, in its discretion, feels should be limited to those with a formal academic background.

The special law under which the defendant was organized and has since operated provides (§ 9):

"* * * all the powers or functions now or which may hereafter be conferred upon independent school district meetings by general law, except the power to elect members of the board of education and the power to authorize the issuance of the bonds of the district, so far as it relates to said district, shall be possessed and exercised by the board of education of said district."

See, M. S. A. 125.06 for general powers and duties of school boards. Section 125.06, subd. 10, provides:

"**Employment of teachers.** It shall employ and contract with necessary qualified teachers and discharge the same for cause."

The Teacher Tenure Act was first adopted as L. 1927, c. 36. It vests in regularly employed teachers, after a probationary period of 3 years, the right to consecutive employment in the public schools of the city of Duluth and to hold their respective positions during good behavior and efficient and competent service.[4] They cannot be discharged or demoted except for causes set forth by statute and after a prescribed hearing and decision concurred in by a majority of the board.[5]

The other important question which plaintiffs' action presents is whether they are entitled to a judgment for money allegedly owed them for unpaid wages. Plaintiffs maintain that a resolution providing annual cost of living adjustment passed by the defendant

[4]M. S. A. 130.23, 130.24.
[5]M. S. A. 130.25, 130.26.

board on March 15, 1946, should apply to them and that they are therefore entitled to an increase in wages such as would have accrued to them by virtue of this resolution. They also maintain that the salary schedule should have been followed in fixing their wage scale. In effect, they contend that the teacher salary schedule became a part of their annual teaching contracts which were entered into orally.

There is nothing in the Teacher Tenure Act which limits or restricts the power of the defendant board operating under special law to fix salaries except that demotion is defined to mean a reduction in rank or transfer to a lower branch of service or to a position carrying a lower salary or compensation. It contains no reference to salary schedules. There is no teachers' salary schedule law upon our statute books and no minimum salary law for teachers or cost of living adjustment law in Minnesota.

It has been held that a salary schedule, such as the cost of living schedule here present and adopted, is only a permissible guide to be used in setting up the wage rates when the individual teacher's annual contract is entered into. Thus it is the contract that establishes the wage rate and not the resolution. The school board or other governing body in a city of the first class in this state, to which the tenure act applies, still has the same power to fix teachers' salaries which it possessed before the passage of the act.[6] Sutton v. Board of Education, 197 Minn. 125, 266 N. W. 447. The Sutton case also supports the proposition that the defendant board has power operating under special law to establish wage rates for different classes of teachers and that the exercise of that power does not show discrimination without reason. Since we must hold upon the record presented to us that the board had the power to establish and fix the wage rates in question, any discussion of alleged waiver of extra wage claims on the part of the plaintiffs seems beside the point. However, the trial court found that, by accepting payment according to the wage agreement entered into without formal protest in

[6]Report Attorney General, 1934, No. 349, 172c-2; Report Attorney General, 1934, No. 354, 161b-14.

some form, the plaintiffs are now estopped from claiming additional wages. The decision of this court in Nelson v. City of Eveleth, 197 Minn. 394, 267 N. W. 261, is controlling on that issue, together with Pratts v. City of Duluth, 206 Minn. 557, 289 N. W. 788; Putnam v. City of St. Paul, 75 Minn. 514, 78 N. W. 90; Ostraum v. City of Minneapolis, 236 Minn. 378, 383, 53 N. W. (2d) 119, 122; Annotation, 160 A. L. R. 496.

■ The facts presented by this record do not permit a holding that the salary schedule adopted by the board fixed the amount of any salary defendant was thereafter bound to pay for the school year. See, Sutton v. Board of Education, *supra.* It was held there that the contract tendered by the board, which plaintiff refused to execute, offered him a salary as large in amount as defendant might lawfully agree to pay. This court then cited authorities from states having statutes similar to our own, on negotiating salary contracts between public school districts and their teachers, in support of the ruling that formal contracts are necessary each school year with respect to the amount of salary to be paid.[7] This court expressed the view in the Sutton case (197 Minn. 131, 266 N. W. 450) "that where a school board of a public school district must provide by tax levy each year for the funds necessary to carry on the school for such year it should follow that contracts governing expenditures must be

[7]Fidler v. Board of Trustees, 112 Cal. App. 296, 296 P. 912; Paquette v. City of Fall River, 278 Mass. 172, 179 N. E. 588; Vroom v. Board of Education, 79 N. J. L. 46, 74 A. 262; School Dist. No. 36 v. Pippin, 134 Okl. 136, 272 P. 455; State ex rel. Brown v. Polk County, 165 Tenn. 196, 54 S. W. (2d) 714. Cases from other jurisdictions applicable insofar as throwing light on the purpose of legislatures in enacting teachers' statutes committed to the rule that the true meaning of the Teacher Tenure Act should be determined by considering the reason and the spirit which induced the legislature to enact it. Kennedy v. Board of Education, 82 Cal. 483, 22 P. 1042; Klein v. Board of Education, 1 Cal. (2d) 706, 37 P. (2d) 74; People ex rel. Callahan v. Board of Education, 174 N. Y. 169, 66 N. E. 674; Cullen v. Board of Education, 126 Cal. App. 510, 15 P. (2d) 227, 16 P. (2d) 272; Anderson v. Board of Education, 126 Cal. App. 514, 15 P. (2d) 774, 16 P. (2d) 272; State ex rel. Bass v. Vernon Parish School Board (La. App.) 194 So. 74.

confined to the same period, and one board may not contract debts to be met by tax levies of subsequent school boards."

Plaintiffs cite Doyle v. City of St. Paul, 204 Minn. 558, 284 N. W. 291, and Doyle v. City of St. Paul, 206 Minn. 542, 289 N. W. 785, as controlling in support of their theory that the salary schedule adopted by the board plus the annual living cost adjustment resolution are integrated into the salary provisions contained in their oral annual teaching contracts. They overlook the fact that the Doyle cases dealt with a city ordinance of the city of St. Paul, wherein the salary rate of teachers was fixed and whereby the teacher filed her written acceptance to become a salaried teacher of the city schools of St. Paul (206 Minn. 544, 289 N. W. 786) "upon the conditions specified" in the notice "and in accordance with the laws and ordinances of the City of St. Paul." The city government of the city of Duluth does not operate and administer the school system of that city. The board of education established as a corporation by special law determines the policies and administers the school system of the city of Duluth. Those cases are neither applicable nor controlling of the problems presented by the record in the case at bar.

M. S. A. 1945, § 130.05, "CLASSIFICATION OF TEACHERS' CERTIFICATES," provides as follows:

"There shall be five classes of teacher certificates:

"(1) Elementary School Certificate,

"(2) High School Certificate,

"(3) Junior College Certificate,

"(4) Administrative and Supervisory Certificates, and

"(5) Vocational, Recreation, and Adult Education Certificates."

M. S. A. 120.36 provides for area vocational-technical schools. M. S. A. 131.01, "PUBLIC SCHOOLS," makes the following classification:

"For the purpose of administration the state board of education shall classify all public schools under the following heads, provided the requirements in subdivision 2 are met:

"(1) Elementary,

    "(a) Graded elementary,

    "(b) Ungraded elementary,

"(2)  Secondary,
　　　　　　"(a)  Department,
　　　　　　"(b)  Four year,
　　　　　　"(c)  Six-year,
　　　　　　"(d)  Junior,
　　　　　　"(e)  Senior,
　　　　　　"(f)  Vocational.
"(3)  Junior Colleges.
"(4)  *Area vocational-technical school.*"  (Italics supplied.)

The testimony clearly reveals that the separate Salter Area Vocational-Technical School was originally and is now a trade school for older pupils and serves an entirely different purpose than a high school where vocational subjects are taught as a part of the curriculum.  It is therefore clear that the teaching skills and preparatory academic training required of a teacher granted an elementary school certificate and a teacher of high school students, even where vocational subjects are taught in high schools, are quite different from the skills required of the teacher in the Salter school and that the latter does not qualify as to the requirements of classification for teaching vocational subjects under the administrative and teaching systems applied in the secondary schools of the city of Duluth.

Plaintiffs contend that the defendant board has shown discrimination toward the plaintiffs by not classifying them as other teachers in the public school system of Duluth and specify their grounds as follows: First, that the defendant does not enter into yearly contracts with the plaintiffs as with the regular teachers in the public school system thereby preventing the plaintiffs from joining the teachers' association, whose rules require such a contract, and from receiving the benefits that naturally accrue to the members of that association.  Second, that the defendant does not permit the plaintiffs to receive the equivalent of social security benefits by payment to the teachers retirement fund, and that until 1951 the plaintiffs were not permitted to make payments to any organization, but that since 1951 they have been placed in the same category as public employees of the city and have paid into their fund.  And third, that

the plaintiffs have not received any cost of living increase in their salary which is allowed all teachers and public employees in the city of Duluth under the cost of living adjustment approved by resolution by the defendant board on March 15, 1946, which resolution has continued in full force and effect in connection with the salary schedule for the regular teachers of the public school system during the time the plaintiffs served as instructors or teachers in the Area Vocational-Technical School.

The Salter school has at all times been operated on a temporary basis and the teachers employed were so informed. They fully understood that their employment was subject to termination if and when the demand for any course ceased or the enrollment dropped to a point where classes would have to be discontinued. Under the circumstances no formal educational requirements were demanded. When the school was established in 1946, tradesmen experienced in their field in industry were sought as teachers. That method of selecting vocational teachers for the Salter school has continued. The board made it a rule to fix their rate of pay comparable to the current rate in similar trades or occupations in the area beginning at $2 per hour in 1946 and thereafter fixing the scale of pay on July 7, 1947, at $13.50 per day; on August 10, 1948, at $15 per day; on September 10, 1951, at $16.50 per day; and on February 9, 1953, effective as of September 1, 1952, at $100 per week. The board contends that annual cost of living increases were taken into account as the pay scale advanced, apart and separate from the board's specific resolution applicable to the regular teachers in the Duluth public school system.

The board of education had by specific resolution provided that the basic teachers' salaries formula should not apply to the teachers hired for vocational training at the Salter Vocational School which was being operated separate and apart from the Duluth public school system, although subject to administration by the board. The Salter Vocational School was later established on August 1, 1950, as the Salter Area Vocational-Technical School under M. S. A. 120.36. The teaching program continued as before.

Students who are not seeking credits toward a high school diploma but whose enrollment would entitle the school district to state vocational per pupil aid may receive instruction there, and veterans still continue to take these courses and financial aid is still forthcoming from the veterans administration. In the school year preceding the trial there were still 46 veterans as against 108 nonveterans enrolled in the school. The policy of the board has been to keep the vocational school entirely separate from the public school system of the city in order that it might not compete with and detract from the ordinary pursuit of a high school course in the secondary schools, and youngsters of compulsory school age cannot attend without permission to drop their regular attendance at the public schools. This system has been pursued by the board because the emphasis in the secondary schools is on preparation either for college, upon professional training, or upon preparation for a trade, or it may consist of just general education; but the work of the secondary school is always pointed toward graduation finally from high school.

Vocational courses have been conducted in the secondary schools of Duluth since 1937 and they have been afforded federal aid since those classes were first established under the Smith-Hughes Act of 1917 and the later George-Barden Act of 1946. The vocational classes in the secondary schools of Duluth afford credits toward a regular high school diploma and with the exception of two teachers, which it was found necessary to employ during World War II, these courses have been taught by teachers with college degrees or those actively pursuing college courses to obtain a college degree. The policy of the board has been to keep the area vocational school separate in order that it might not compete with and detract from the ordinary courses pursued in the secondary schools where certain vocational courses provide credits toward graduation.

The defendant board has strictly followed the rule of entering into written annual contracts with its teachers in the elementary and secondary schools of the school system of Duluth wherein the annual salary is specified. It has followed this rule since the adoption of the Teacher Tenure Act specifying in the contracts that they are entered

into without prejudice to any rights of the teachers under the Teacher Tenure Act, and the board has continually adopted teachers' basic salary schedules since 1919-1920 and used the same as a guide in arriving annually at the salaries to be fixed in the annual contracts and to be paid accordingly. It has also been the policy of the defendant board for years to hire whenever possible only those applicants with college degrees, and these qualifications are always considered in the light of the salary schedule. Recommendations are made to the schools committee and the recommended salary is specified. The schools committee then makes its recommendation to the board which takes the final action thereon. If the action is favorable, the clerk prepares the individual contract and it is signed by the teacher, the president of the board, and the clerk; and throughout, the applicant is specifically named and the specific amount of the salary stated. It is clear therefore that the teachers' salary schedule as adopted and the resolution providing annual cost of living adjustments form no part of the contract terms made pursuant to the agreement of the parties unless the same be done by specific reference in the contract. No such procedure was followed in hiring the teachers at the Salter Area Vocational-Technical School when entering into those contracts which were made orally and no such records were kept.

The board further requires that teachers in the general school system, including teachers of vocational courses within that system, participate in and take assignments from time to time to supervise extracurricular activities designed to forward the well-rounded education of the students, and these are of many kinds. Periodic physical examinations are required of the regular teachers. The department of education requires certain in-service teachers' training of teachers of vocational subjects in the secondary school system and keeps a record as to each such teacher in the form of clock hours of training. These courses are related to their particular field and vocational teaching in general and may be given by the local director of vocational education or may be taken at the University of Minnesota. Further, all teachers in the public school system are required, entirely separate and apart from any such departmental requirements,

to obtain professional credits in the form of college credits obtained through extension courses or attendance at summer school or credits given for extensive travel, and these must be approved by a committee of teachers and administrators according to a set of standards prepared and established for guidance therein. These requirements do not apply to the teachers employed at the Salter Area Vocational-Technical School, although they are required of teachers of vocational courses where credits may be earned in vocational subjects as a part of the curriculum in the secondary schools in the city of Duluth.

The defendant admits that state vocational aid funds go into the operation of the Salter Area Vocational-Technical School, but it contends also that veterans administration funds have been its main support and that the bookkeeping on state forms has no connection with its separate administration. The board also contends that the teachers who instruct at the Salter Area Vocational-Technical School are not teachers in the sense that they have regular technical college training required on the part of teachers generally or required to obtain certificates qualifying them to teach in the regular public schools of the city of Duluth; that they are not trained as teachers in the many respects required under regular teacher classifications with reference to elementary and secondary schools; and that therefore they are not eligible to obtain teaching positions in the public school system of the city of Duluth, except as they meet the requirements in the Salter Area Vocational-Technical School.

10. This court has heretofore recognized in its decisions that the tenure law is "wise legislation, promotive of the best interests not only of the teachers affected but of the schools as well." Oxman v. Independent School Dist. of Duluth, 178 Minn. 422, 426, 227 N. W. 351, 352. One of the main purposes of its enactment was stability, certainty, and permanency of employment on the part of those who had shown by educational attainment and by probationary trial their fitness to become regular teachers in the public school system.[8] It is certain also that it was enacted for the benefit and advantage of the

---

[8] See, McSherry v. City of St. Paul, *supra*.

public school system of the state and established merit as the essential basis for the right of permanent employment. It did not, however, impair the discretionary power with which school boards and school authorities are vested in order to make the best selections of teachers consonant with the public good when such powers are exercised within the boundaries of the act. The act does not in any sense have the effect of transferring from the school boards, who are the duly elected representatives of the electors of the school district as well as the parents and the taxpayers, to the teachers either the management, supervision, or control of our school system, as it has been developed, since such powers have been vested in the school boards by other statutes providing for general operation and management.

There has been given to the administrative officers of our public school system by statute certain general powers to determine matters of policy in the administration of school affairs. The powers and duties of such school boards are fully set forth in M. S. A. 125.06 and the special act under which the defendant administers and operates. A duly constituted school board established by special law such as defendant is a part of the executive department, but when such board operates one of our several public school systems under the general powers given to it, it exercises more than merely administrative functions for it has certain powers of a legislative character and other powers of a quasi-judicial character such as passing upon discharge or demotion and such hearings as it may conduct after proceedings commenced under the provisions of M. S. A. 130.26. The courts can exercise little if any control over its administrative, legislative, and executive functions. This court held in State ex rel. Ging v. Board of Education, 213 Minn. 550, 589, 7 N. W. (2d) 544, 564, that if a district court, in reviewing administrative proceedings on certiorari, determines that the administrative board has acted upon an erroneous theory of law, the court should remand the proceedings with directions to proceed under a correct theory and should not itself attempt to decide the case on the merits.

Reading the Teacher Tenure Act and the related statutes governing the establishment and administration of our public school system

reasonably leads to the conclusion that the contract terms of employment of public school teachers are left to the discretion of the defendant board and this applies to fixing salaries for the school year. The board in the exercise of its discretion also determines the teacher's "position" under the Teacher Tenure Act and assigns the teacher's relative place, rank, or standing in the school system. The exercise of its discretion in such administrative matters, being executive, is not subject to review generally by the judiciary. There may arise situations where a school board when challenged in appellate court litigation will appear to have acted in bad faith or abused its discretion in so unreasonable a manner as to be arbitrary or capricious and, hence, beyond the powers granted. See, Lindquist v. Abbett, 196 Minn. 233, 265 N. W. 54. We do not find from the record that such an issue has in fact been presented here either by acts of bad faith, abuse of discretion, or otherwise. We must conclude that it is not here.

Plaintiffs request that the court consider and determine their rights in teachers retirement under M. S. A. 135.19 and 135.27. Teachers retirement in this state is administered by a separate organization. That organization was not made a party to this action. The court therefore has no jurisdiction to determine plaintiffs' rights in any matter having to do with teachers retirement or any contribution to that organization on behalf of plaintiffs. M. S. A. 555.11.[9]

The trial court found that the plaintiffs through oral agreements arrived at between the parties were provided salary increases from time to time and that these increases took into consideration increased cost of living and that the plaintiffs were fully paid on the basis of the agreements they made. That no unpaid salaries are due them.

The trial court further found and entered its conclusions of law as follows: That the plaintiffs are not entitled to relief involving the Duluth Teachers Retirement Fund.

[9] 1 C. J. S., Actions, § 18, p. 1050; 16 Am. Jur., Declaratory Judgments, § 55; Redick v. Peony Park, 151 Neb. 442, 37 N. W. (2d) 801; Central High School Athletic Assn. v. City of Grand Rapids, 274 Mich. 147, 264 N. W. 322.

That plaintiffs are not entitled to tenure rights in the elementary or secondary schools of the independent school district of the city of Duluth.

That plaintiffs are entitled to tenure rights in the position of area vocational teachers in the Salter Area Vocational-Technical School.

There was ample evidence to support the court's findings of fact on the issues presented and the conclusions of law entered pursuant thereto. We agree with the conclusions reached by the trial court.

Affirmed.

