CONSECO LOAN FINANCE COMPANY, f/k/a Green Tree Financial Servicing Corporation, a/f/k/a Green Tree Financial Corporation, claimant, Respondent,

v.

Michael S. BOSWELL, et al.,
Respondents Below,

Uniprop Homes, Inc., a Florida
corporation, et al.,
Appellants.

No. A04–161.

Court of Appeals of Minnesota.

Oct. 19, 2004.

James A. Sanford, Paige M. Fitzgerald, Stephenson & Sanford, P.L.C., Wayzata, MN, for respondent Conseco Loan Finance Company.

Thomas Francis DeVincke, Robyn Kay Johnson, Bonner & Borhart, LLP; and Edward S. Adams, University of Minnesota Law School, Minneapolis, MN, for appellants.

Considered and decided by LANSING, Presiding Judge; SHUMAKER, Judge; and FORSBERG, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

LANSING, Judge.

This appeal in an action for replevin of a manufactured home involves a dispute between a sales finance company with a security interest in the home and the corporate manager of the manufactured-home park where the home was abandoned. The district court determined that the home had been abandoned, the management company did not have a removal-and-storage lien, and the sales finance company was entitled to possession. We affirm the district court's determinations and reject the management company's claim that the failure to join the Minnesota Department of Public Safety and the Anoka County Sheriff's Department deprived the court of jurisdiction to grant declaratory relief.

## FACTS

Conseco Loan Finance Company is engaged in the business of financing the purchase of manufactured homes. In this capacity, Conseco provided the financing for Michael Boswell and Hope Lemieux to purchase a manufactured home, and Boswell and Lemieux signed a manufactured-home retail installment contract and security agreement. The contract provided that failing to remit monthly payments would result in a default, authorizing Conseco to accelerate the contract and repossess the manufactured home. The record shows that Conseco's lien was perfected with the Minnesota Department of Public Safety in January 1999.

Boswell and Lemieux leased a lot in a Blaine manufactured-home park, owned and operated by Uniprop Homes, Inc. They placed their manufactured home on the lot and paid rent under the lease from April 1998 until December 2001. In January 2002 Uniprop sent them a ten-day notice of nonpayment of rent as a precursor to an eviction action. Conseco received a copy of the notice. Thereafter, Uniprop initiated an eviction action and obtained a writ of recovery for the rented lot on February 5, 2002.

Beginning in December 2001, Boswell and Lemieux failed to remit their monthly retail installment payments to Conseco. Conseco sent them a notice of default and right to cure on February 4, 2002, stating that if they failed to cure within thirty days, Conseco would exercise its right to repossess. Conseco was unable to locate Boswell and Lemieux to personally serve the notice of default or to serve the summons and complaint for the ensuing replevin action. Conseco served them by publication, with the first publication appearing on April 12, 2002.

On the same day, Uniprop published a notice of public sale of the manufactured home as abandoned property to satisfy its claim for $2,107 in storage and preservation costs. Uniprop had secured the manufactured home, but had not moved it from the rented lot. The Anoka County Sheriff's Department conducted an execution sale on May 3, 2002. Uniprop, the only bidder at the sale, purchased the home for $1. The undisputed fair market value of the home at the time of the sale was $36,000.

Conseco amended its complaint in the replevin action to add Uniprop as a defendant and to add a request for judgment declaring Conseco's ownership of the home or, in the alternative, providing that it be listed as a secured party on the certificate of title. The district court granted Conseco temporary possession of the home pending the hearing. In its response to the amended complaint, Uniprop asserted the affirmative defense that Conseco had failed to join parties necessary to the declaratory judgment action.

The district court granted Conseco's motion for summary judgment and granted Conseco the immediate and permanent right to possession of the home. The court concluded that even though Uniprop had a claim for storage and preservation of the abandoned home, this claim did not provide a basis for a removal-and-storage lien and, therefore, Uniprop's claim was subordinate to Conseco's perfected security interest.

Uniprop appeals, asserting that (1) it had a landlord's lien under Minn.Stat. § 504B.365 (2002) or a statutory possessory lien under Minn.Stat. § 514.18 (2002) for reasonable storage and preservation costs, which took priority over Conseco's secured interest and was enforceable by public sale; and (2) the district court erred by issuing its declaratory judgment absent joinder of the Minnesota Department of Public Safety and the Anoka County Sheriff's Department.

### ISSUES

I. Does a landlord who stores a defaulting tenant's manufactured home on the rental premises have a landlord's lien under Minn.Stat. § 504B.365 (2002) or a possessory lien under Minn.Stat. § 514.18 (2002) that would take priority over a previously perfected security interest in the property?

II. Are the Minnesota Department of Public Safety and the Anoka County Sheriff's Department necessary parties for the court to provide declaratory relief in the replevin action?

### ANALYSIS

#### I

A summary judgment based on application of a statute to undisputed facts is a legal determination that we review de novo. *Wiegel v. City of St. Paul*, 639

N.W.2d 378, 381 (Minn.2002). To determine whether a statute has been correctly applied, we focus on the words of the statute to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2002). If the meaning is plain and unambiguous we apply that meaning as a manifestation of legislative intent. *Kersten v. Minn. Mut. Life Ins. Co.*, 608 N.W.2d 869, 874–75 (Minn.2000).

Article 9 of the Uniform Commercial Code governs a security interest in personal property in Minnesota. *See* Minn.Stat. § 336.9–109(a) (2002) (stating Article 9 applies to transactions that create security interest in personal property or fixtures by contract). The retail installment contract by which Boswell and Lemieux purchased the manufactured home specified that the home would be considered personal property, and that designation is not disputed in this litigation. It is also undisputed that the contract created a purchase-money security interest in the home. *See* Minn. Stat. § 336.1–201(37) (2002) (defining UCC "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation" under law in effect at time of transaction; definition revised under 2004 Minn. Laws ch. 162, art. 1, § 10); *see also* Minn.Stat. § 336.9–103 (2002) (defining purchase-money security interest). Finally, it is undisputed that Conseco had perfected its purchase-money security interest in 1999 as stated in a confirmation of lien perfection issued by the Minnesota Department of Public Safety. *See* Minn.Stat. §§ 168A.01, subd. 3, 168A.05, 168A.17, subd. 2, 168A.18 (2002) (providing that the "department," defined as the registrar of motor vehicles, shall issue a certificate of title for a manufactured home so long as personal property tax is paid; governing method of perfecting a security interest under this chapter; stating department

will mail a certificate of title showing name and address of secured party).

Except as otherwise provided under the UCC, Article 9 provides that "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Minn.Stat. § 336.9–201(a) (2002). Uniprop contends that Minn.Stat. § 504B.365, subd. 3 (2002), authorized its assertion of a landlord's lien against the home, that this lien was not subject to the provisions of the UCC, and that it could be enforced by sheriff's execution sale without regard to Conseco's security interest. *See* Minn.Stat. § 336.9–109(d)(1) (2002) (stating inapplicability of Article 9 to landlord's liens); *see also* Minn.Stat. Ann. § 336.9–109 U.C.C. cmt., para. 10 (West 2002) (noting that Article 9 generally applies only to consensual security interests in personal property and excludes landlord's liens).

Under Minn.Stat. § 504B.365, subds. 3(a)–3(c), *"[i]f the defendant's personal property is to be stored in a place other than the premises,* the officer shall remove all personal property of the defendant at the expense of the plaintiff" and, if the defendant does not pay the expenses of removing the property, "the plaintiff has a *lien* on all the personal property for the reasonable costs and expenses incurred in removing, caring for, storing, and transporting it to a suitable storage place," which may be enforced by execution and public sale. (Emphasis added.) For personal property that the landlord does not remove, Minn.Stat. § 504B.365, subd. 3(d), states, *"[i]f the defendant's personal property is to be stored on the premises,* the officer shall enter the premises … and the plaintiff may remove the defendant's personal property. Section 504B.271 applies to personal property removed under this paragraph." (Emphasis added.) Spe-

cifically addressing abandonment of property on rental premises, Minn.Stat. § 504B.271, subd. 1 (2002), provides that "[t]he landlord has a *claim* against the tenant for reasonable costs and expenses incurred in removing the tenant's property and in storing and caring for the property." (Emphasis added.)

■ The plain language of Minn.Stat. § 504B.365, subd. 3, and its related section, Minn.Stat. § 504B.271, subd. 1, furnishes two distinct remedies for the landlord if the tenant abandons personal property after an eviction. First, if the landlord chooses to remove the property from the premises and store it in another location, Minn.Stat. § 504B.365, subd. 3(a)-(c), authorizes a lien on the property for reasonable costs for removal and storage of the property, which may be enforced by execution and public sale. Alternatively, should the landlord elect to store the property on the premises, Minn. Stat. § 504B.365, subd. 3(d), read in conjunction with Minn.Stat. § 504B.271, subd. 1, provides that the landlord has a claim, rather than a lien, against the tenant for reasonable costs and expenses incurred in storing and caring for the property. This interpretation is consistent with commentary addressing the interpretation of the statutes. *See* Lawrence R. McDonough, *Wait a Minute! Residential Eviction Defense is Much More Than "Did You Pay the Rent?,"* 28 Wm. Mitchell L.Rev. 65, 141 n. 370 (2001) (stating that "[w]hen property is to be stored on the premises … the landlord has only a claim, and not a lien, for the reasonable removal and storage costs").

Uniprop cites a previous version of the unlawful detainer statute, which created a landlord's lien for "reasonable costs and expenses incurred for removing [a tenant's] personal property [after eviction] and for the proper caring and storing [of]

the same." Minn.Stat. § 566.17 (1988) (repealed by 1998 Minn. Laws ch. 253, § 80). But the legislature recodified landlord-tenant statutes in 1998, and the statutory provisions at issue, Minn.Stat. §§ 504B.271 and 504B.365, were enacted in 1999. 1999 Minn. Laws ch. 199, art. 1 §§ 35, 53.

■ The plain language of the recodified statutes provides for distinct remedies for a landlord who stores the property on the rental premises and a landlord who incurs moving and off-site storage costs by transferring the property to another location. *See Honeymead Prods. Co. v. Aetna Cas. & Sur. Co.*, 270 Minn. 147, 150, 132 N.W.2d 741, 743 (1965) (stating presumption that a legislative amendment to a statute demonstrates an intention to change existing law). Thus, by the plain terms of the governing statute, Uniprop's act of storing the manufactured home on the rental premises after the tenants' default created only a claim for reasonable storage and preservation costs, rather than a landlord's lien, and the UCC applies to establish the priority of Conseco's secured interest over that claim.

Additionally, Uniprop argues that the application of Minn.Stat. § 514.18 (2002) provided Uniprop with a possessory lien, which, under the UCC, takes priority over Conseco's security interest. *See* Minn. Stat. § 336.9–333(b) (2002) (stating that possessory lien on goods has priority over security interest in the goods unless lien is created by a statute expressly providing otherwise).

■ Uniprop's argument overlooks the fact that Minn.Stat. § 514.18, by its terms, is limited to a party who stores or cares for personal property "at the request of the owner or legal possessor of [the] property" in certain specified situations, such as a bailment. Minn.Stat. § 514.18, subd. 1. Thus, the statute applies to liens arising from transactions in the normal course of business and does not support an interpretation creating a lien for Uniprop's act of storing and caring for abandoned property on rental premises following an eviction. *See Aircraft Repair Servs. v. Stambaugh's Air Serv., Inc.*, 175 F.3d 314, 320 (3d Cir.1999) (defining possessory liens as consensual in nature, arising from agreement between owner of goods and artisan rendering services for those goods); *see also* Minn.Stat. Ann. § 336.9–333 U.C.C. cmt., para. 2 (West 2002) (defining possessory liens as "statutory liens whose effectiveness depends on the lienor's possession of goods with respect to which the lienor provided services or furnished materials in the ordinary course of its business"). For these reasons we agree with the district court's determination that no possessory lien attached to Uniprop's claim and Conseco's security interest remains superior to Uniprop's interest as an unsecured subsequent creditor.

■ Under the UCC, a security interest continues in collateral notwithstanding its sale or disposition unless the secured party authorized the disposition. Minn.Stat. § 336.9–315(a)(1) (2002). Conseco did not authorize the sheriff's sale of the manufactured home. Thus, its security interest was not extinguished by the sale to Uniprop, and the district court did not err in granting summary judgment declaring Conseco's right to permanent possession of the manufactured home.

**II**

■ The Minnesota Declaratory Judgment Act authorizes the courts to declare rights, status, and other legal relations that are affected by a statute, ordinance, contract, or franchise. Minn.Stat. §§ 555.01, 555.02 (2002). In a declaratory judgment action, "all persons shall be made parties who have or claim any inter-

est which would be affected by the declaration." Minn.Stat. § 555.11 (2002). This joinder requirement "is consonant with but broader than the joinder requirement in [Minn. R. Civ. P.] 19." *Unbank Co., LLP v. Merwin Drug Co.*, 677 N.W.2d 105, 108 (Minn.App.2004); *see* Minn. R. Civ. P. 19 (listing factors for determining whether party is indispensable).

Uniprop argues that the district court erred by adjudicating the propriety of the acts of the Minnesota Department of Public Safety and the Anoka County Sheriff's Department without the presence of those agencies in the action. But the agencies' acts of conducting a sheriff's sale and issuing a new certificate of title after the sale were purely ministerial, and those acts did not implicate their legislatively mandated power or discretionary authority. *Cf. Frisk v. Bd. of Educ.*, 246 Minn. 366, 382, 75 N.W.2d 504, 514 (1956) (declining to declare rights under teachers retirement act when administering board was not party to declaratory judgment action). The district court's order granting Conseco permanent possession of the manufactured home did not address the actions of the sheriff's department in conducting the sale, but only determined that the sale did not have the legal effect of extinguishing Conseco's prior secured claim. Similarly, the district court's declaration of error in failing to list Conseco as a secured party on the certificate of title did not affect any interest of the department of public safety because the issuance of a certificate of title after an involuntary transfer is not conclusive of the rights of the parties involved. *See* Minn.Stat. § 168A.12, subd. 3 (2002) (stating action of issuing new certificate of title is not conclusive of rights of owner or secured party named in old certificate). Thus, because the Minnesota Department of Public Safety and the Anoka County Sheriff's Department were not necessary

parties to the declaratory judgment action, the district court did not lack jurisdiction.

## DECISION

A residential landlord who stores the personal property of a defaulting tenant on the rental premises does not have a landlord's lien or a statutory possessory lien in the property. We affirm the district court's summary judgment in the replevin action determining that Conseco's perfected security interest in the manufactured home is superior to Uniprop's claim for preservation and storage costs arising from its on-site storage of the home. The district court did not err in concluding, as a matter of law, that the sheriff's sale failed to extinguish Conseco's interest in the property. Finally, the joinder of governmental agencies that exercised solely ministerial duties in connection with the property in dispute was not necessary for the district court to exercise declaratory relief.

**Affirmed.**