## JOHN C. OSTRAUM v. CITY OF MINNEAPOLIS.[1]

April 18, 1952.

No. 35,685.

*Cronin, Mitchell & Spooner,* for appellant.

*John F. Bonner,* City Attorney, and *Carsten L. Jacobson,* Assistant City Attorney, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for amended findings or a new trial.

---

[1]Reported in 53 N. W. (2d) 119.

Plaintiff brought this action to recover overtime pay for services performed as a laborer. He was a civil service classified employe of the city of Minneapolis from 1911 until his retirement in 1947. From 1911 until 1922, he worked as a common laborer in various departments. Following an injury in an automobile accident in September 1922, he was transferred to a warehouse of the engineering department of that city. In 1935, he was again transferred without further civil service classification or appointment to the Hiawatha avenue warehouse of the same department. His hours were reduced from 16 to 8 daily and were from 4 p. m. until midnight each day. His duties consisted of watching the warehouse, cleaning the stock room and offices, washing floors and windows, cleaning out wastebaskets, cleaning up the laboratory, and doing odd jobs as requested by his immediate superior.

Plaintiff's civil service classification during the aforementioned times varied. During the period from April 1, 1930, until April 16, 1932, the civil service classification listed his position as a "Watchman" three times, as a "Laborer" twice, and as a "Laborer (Watchman)" twice. A civil service questionnaire in 1937, under "Examination Title," listed him as a laborer and, under "Departmental title by which this position is known," as a watchman. Plaintiff's civil service register for the years 1930 to 1940 listed his position on the face of it both as "Watchman" and "Laborer (1931)." The civil service register for the years 1941 to 1947 listed his position as "Laborer," followed by the code number for laborers (permanent), but under miscellaneous remarks on the reverse side he was designated as "Watchman."

Regardless of these civil service classifications, however, it has apparently been the custom of the city of Minneapolis for a long period to distinguish between common laborers and watchmen. It appears that watchmen work 16 hours a day for seven days a week, but receive straight laborer's pay for only 8 hours a day, with no overtime. Men assigned to such duty by the city were those whose health or injuries prevented them from performing difficult manual labor.

Since May 18, 1938, there has been in effect in the city of Minneapolis an ordinance (plaintiff's exhibit D) providing for the rate of pay to laborers employed by the city, including time and a half for over 40 hours per week and double time on Sundays. Another ordinance (plaintiff's exhibit F), approved January 16, 1945, provides for overtime pay to certain city employes, but specifically excepts "laborers classified by Civil Service rules * * * and watchmen," thus distinguishing between laborers and watchmen, although excluding them both from the operation of that ordinance. On the same date, another ordinance (plaintiff's exhibit E) was approved, which provided for overtime pay for "All laborers classified by Civil Service rules," but this ordinance made no attempt to distinguish between laborers and watchmen.

The case was tried before the court without a jury in December 1950. After making its findings, the trial court concluded that from 1922 until plaintiff's retirement he was employed by defendant as a watchman and not as a laborer within the meaning of the ordinances; that he was paid in full for his services or, in any event, waived any claim that he might have had for overtime or additional compensation; therefore, that he is estopped from claiming or collecting any sum claimed to be due him for such overtime.

It is plaintiff's contention on this appeal that he was a laborer during the period for which he seeks recovery and is thus entitled to the benefit of the ordinances providing for overtime pay.

Although plaintiff has raised numerous assignments of error, we shall consider the matters which we deem pertinent for a determination of this case.

(1) Was plaintiff's classification that of a laborer under the civil service rules of the city of Minneapolis?

(2) Did his acceptance, *with knowledge,* of wages less than those fixed by the ordinance for laborers constitute a waiver or estoppel of his right to collect such overtime wages after his retirement?

■ In connection with the first question, it appears to us that plaintiff has been classified as a laborer under the civil service classification. This is evidenced by the fact that he was given a permanent laborer's code number. We find no authority to support the contention that defendant can classify employes for payroll purposes apart from their civil service categories. However, we deem it unnecessary to base our decision on this point, since we are of the opinion that plaintiff has precluded himself from any rights which he may have had to overtime pay by acquiescing for a long period of time to the compensation he received, and thus has waived his rights.

■ At the outset, we must accept the court's finding that plaintiff had knowledge, despite his denial thereof, that the ordinance provided for overtime payments for laborers, which payments plaintiff was not receiving and which he now seeks to recover. While plaintiff claims that he first learned of this difference in pay classification when he was in the hospital shortly before his retirement, the trial court, which was the sole judge of the credibility of his testimony, refused to accept this version of his story and found that he had such knowledge. In this respect we agree with the trial court. It seems incredible that anyone employed by the city for as many years as plaintiff would not have known or found out between 1938 and the time of his retirement in 1947 that regular laborers were receiving overtime pay for Saturday and Sunday labor. Rather, it would seem reasonable to assume that even with this knowledge he was content for years to perform the duties to which he was assigned in lieu of what might have been more arduous duties at times in other classes of labor for the city.

The authorities are in disagreement as to whether an employe of a municipal corporation can waive or is estopped from asserting his right to compensation as prescribed by the city ordinances. One view is to the effect that the acceptance, without objection, of a sum less than the one owed will estop an officer or employe of a municipal corporation from claiming more. Glaser v. City of Burlington, 231 Iowa 670, 1 N. W. (2d) 709; Love v. Mayor, etc.,

of Jersey City, 40 N. J. L. 456; Van Houghten v. City of Englewood, 124 N. J. L. 425, 12 A. (2d) 668; Steele v. City of Chattanooga, 19 Tenn. App. 192, 84 S. W. (2d) 590. This rule has been applied in a situation similar to the one here, where a municipal employe had receipted in full for his regular wages for several years and later sought to recover overtime wages. Grady v. City of New York, 182 N. Y. 18, 74 N. E. 488. A review of the cases, however, indicates that a great many of the situations where a public employe was estopped from claiming further wages were in times of economic emergency and that such employes made voluntary donations of part of their wages in order to aid the municipality. Pratts v. City of Duluth, 206 Minn. 557, 289 N. W. 788; Altenberg v. City of Superior, 228 Wis. 272, 280 N. W. 342, 118 A. L. R. 1452; Coughlin v. City of Milwaukee, 227 Wis. 357, 279 N. W. 62, 119 A. L. R. 990; Glaser v. City of Burlington, 231 Iowa 670, 1 N. W. (2d) 709.

On the other hand, many jurisdictions hold that the acceptance of a sum less than that prescribed for a public officer or employe does not estop him from later claiming the full amount. Anderson v. City of Jacksonville, 380 Ill. 44, 41 N. E. (2d) 956; State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S. W. (2d) 532; Schwarz v. Philadelphia, 134 Pa. Super. 544, 4 A. (2d) 573; Clark v. State, 142 N. Y. 101, 36 N. E. 817; Malcolm v. Yakima, etc., School Dist. 23 Wash. (2d) 80, 159 P. (2d) 394. This rule has also been applied in situations similar to the instant one where municipal employes have accepted their regular salary and afterward have claimed additional wages for overtime services performed. McGuire v. City of Dallas, 141 Tex. 170, 170 S. W. (2d) 722.

In Allen v. City of Lawrence, 318 Mass. 210, 214, 61 N. E. (2d) 133, 136, 160 A. L. R. 486, a municipal laborer accepted less than the amount provided by ordinance. The court held that he did not waive his right to recover the full amount due him, saying:

"* * * It would be contrary to the clearly expressed policy of the ordinance to permit contracts to be made in derogation of it. The acceptance by the plaintiffs of checks containing statements acknowledging 'payment in full' is no bar to their right to recover."

The reasoning in these cases seems to be that waiver of his full wages by a public employe or officer would be contrary to public policy. Lemper v. City of Dubuque, 237 Iowa 1109, 24 N. W. (2d) 470; Allen v. City of Lawrence, *supra*. A great many of these cases distinguish the aforementioned instances of voluntary donations of wages to a municipality in times of public financial distress as exceptions to the rule. This apparently is based on the assumption that considerations of public policy do not outweigh the predicament of the municipality in such an emergency. Steele v. City of Chattanooga, 19 Tenn. App. 192, 84 S. W. (2d) 590, *supra*.

The question, then, is whether there is such a public policy in the instant case which is sufficient to prevent plaintiff from being estopped to press his claim for overtime wages due him. We are of the opinion, even assuming that the public-policy argument is controlling, that there is no such policy here. Under the peculiar facts of this case, the trial court, sitting as a jury, saw fit to find that knowledge of the overtime-pay ordinances could be imputed to plaintiff. Even if this were not true, a municipal employe or officer is often presumed to have knowledge of the ordinances fixing his salary. Galbreath v. City of Moberly, 80 Mo. 484. Furthermore, the contract of employment here is executed, not executory; therefore, there "is now no possibility that the public good will be in any wise affected; the service of this particular employee having been terminated." Steele v. City of Chattanooga, 19 Tenn. App. 192, 194, 84 S. W. (2d) 590, 592. In view of these circumstances, we conclude that the ordinary principles of estoppel and waiver apply. The evidence was sufficient to sustain the trial court's finding that plaintiff made a voluntary relinquishment of any right to overtime wages and thus waived such claim as he may have had.

Affirmed.