**DEALERS MANUFACTURING, CO., Respondent,**

v.

**COUNTY OF ANOKA, Relator.**

No. C9–99–1869.

Supreme Court of Minnesota.

Aug. 10, 2000.

Thomas G. Haluska, Assistant Anoka County Attorney, Anoka, for appellant.

Daniel J. Biersdorf, Biersdorf & Associates, P.A., Minneapolis, for respondent.

Thomas R. Wilhelmy, Steven Z. Kaplan, Fredrickson & Bryon, Minneapolis, for amicus curiae.

## OPINION

STRINGER, Justice.

We consider whether a taxpayer challenging a property tax assessment is entitled to a reduction in the assessed value of contaminated property based on stigma. Taxpayer, Dealers Manufacturing, Co. (Dealers), petitioned the tax court for a reduction in the assessment of its contaminated property in Anoka County (the county) on the basis that, because the county failed to take into account the stigma ef-

fect on the market value of the property, the assessed value exceeded the market value of the property. The parties filed cross-motions for partial summary judgment as to the interpretation of Minn.Stat. § 273.11, subd. 17 (1998), specifically, whether it limits reduction in market value for stigma relating to contamination. The tax court granted Dealers' motion concluding that Minn.Stat. § 273.11, subd. 17 does not apply to reductions in market value due to stigma. *See Dealers Mfg. Co. v. County of Anoka,* No. C4–98–2963, 1999 WL 717228, at * 5–6 (Minn. Tax Ct. Sept. 8, 1999). We affirm.

The subject of this property tax dispute is a manufacturing plant site in Anoka County owned by Dealers. In 1988 Dealers discovered groundwater and soil contamination related to the use of solvents and the Minnesota Pollution Control Agency (MPCA) placed the property on the State Superfund list. Dealers implemented a MPCA-approved response action plan in 1995. As of 1998, Dealers had spent $350,000 to clean up the property against a total clean-up cost projection of $560,000. Contaminants were still present on the property at the time of the tax court's partial summary judgment ruling.

In the course of its remediation efforts, in 1997 Dealers obtained an appraisal by Alan Leirness, MAI, which concluded that the property value was subject to a stigma devaluation factor due to the risk of liability for clean-up costs, fear of liability to the public arising from the contamination, and possible lack of mortgageability.[1] In Leirness' opinion the impact of the stigma could exceed $500,000.

The county assessed the market value of the property at $1,336,600 in 1997 and Dealers filed a petition in the tax court in 1998 pursuant to Minn.Stat. § 278.01

---

**1.** The concept of "stigma" is based on the theory that the value of contaminated property is reduced due to the risk to a purchaser of liability for clean-up costs, fear of liability to members of the public who are harmed by contaminants on the property, and possible lack of mortgageability. *See* Peter J. Patchin, MAI, *Valuation of Contaminated Properties,* Appraisal J., Jan. 1988, at 7.

(1998)[2] challenging the assessment on the basis that it exceeded the property's actual market value in violation of Minn.Stat. § 273.11, subd. 1 (1998),[3] and that the property was not assessed equally when compared with other property in violation of Dealers' constitutional rights to equal protection and uniform taxation.[4] The county responded that Minn.Stat. § 273.11, subd. 17[5] limits reductions in market value resulting from contamination, including the stigma factor, to the reasonable cost of a response action plan.

█ In granting Dealers' motion for partial summary judgment, the tax court noted that Minn.Stat. § 273.11, subd. 17 makes no reference to "stigma"—it addresses only reduction in market value resulting from the "presence of contaminants"—and that because stigma can remain after all contaminants have been removed from the property, it is incongruous to construe it to be included in "contamination value." The court further noted that assessors are required to consider all relevant factors when valuing property and to assess property at market value, *see* Minn. Stat. § 273.12 (1998); Minn.Stat. § 273.11, subd. 1, and to exclude or limit the stigma factor in the valuation of the property would be inconsistent with this statutory mandate. Finally, the tax court reasoned that as the legislature was well aware of the impact of stigma on property tax revenues,[6] if it had intended to include stigma among the factors determining contamination value, it would have referenced "stigma" in Minn.Stat. § 273.11, subd. 17. The tax court ordered a trial to determine the value of the property as of January 2, 1997, consistent with its ruling that the market value impact of stigma was not to be included in the contamination value for purposes of section 273.11, subd. 17.[7]

2. Minnesota Statutes § 278.01, subd. 1 provides a statutory remedy for a taxpayer whose property has been assessed in excess of market value:

> Any person having personal property, or any estate, right, title, or interest in or lien upon any parcel of land, who claims that such property * * * has been assessed at a valuation greater than its real or actual value * * * may have the validity of the claim, defense, or objection determined by the district court * * * or the tax court * * *.

Minn.Stat. § 278.01, subd. 1.

3. Minn.Stat. § 273.11, subd. 1 states: "Except as provided in this section * * * all property shall be valued at its market value."

4. *See* U.S. Const.amend. XIV, § 1; Minn. Const. art. X, § 1. The partial summary judgment ruling by the tax court was based on a statutory analysis and therefore the court did not reach the issues related to the Equal Protection Clause of the United States Constitution or the Uniformity Clause of the Minnesota Constitution.

5. Minnesota Statutes § 273.11, subdivision 17 provides:

> In determining the market value of property containing contaminants, the assessor shall reduce the market value of the property by the contamination value of the property. The contamination value is the amount of the market value reduction that results from the presence of contaminants, but it may not exceed the cost of a reasonable response action plan or asbestos abatement plan or management program for the property.

Minn.Stat. § 273.11, subd. 17.

Section 273.11, subdivision 17 references Minn.Stat. § 270.92, subd. 6 (1998) for the definition of a response action plan which describes a plan to remove contamination approved by the commissioner of the MPCA or the commissioner of agriculture pursuant to Minn.Stat. § 469.174, subd. 17 (1998); Minn. Stat. chapter 115B (1998); Minn.Stat. chapter 18D (1998); or Minn.Stat. § 115C.03 (1998).

6. The tax court noted that representatives from county assessors' offices had testified regarding assessing properties impacted by stigma at a hearing of the House of Representatives Committee on Taxes. *See Dealers Mfg. Co.*, 1999 WL 717228, at *4; *see also* Hearing on H.F. 427, H. Comm. on Taxes, 78th Minn. Leg., Mar. 26, 1993 (audio tape).

7. While we do not condone the advisory nature of the matter before us, we review this appeal in the interests of judicial economy. *See Tarutis v. Commissioner of Revenue*, 393 N.W.2d 667, 669 (Minn.1986). We repeat our warning in *Brookfield Trade Center, Inc. v. County of Ramsey* however, that with respect to appellate review not specifically autho-

Our review of an order of the tax court is limited to whether the court lacked jurisdiction or it was contrary to the evidence or based on an error of law. *See* Minn.Stat. § 271.10 (1998). The tax court appropriately grants summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Minn. R. Civ. P. 56.03; *see also Brookfield Trade Ctr., Inc.,* 609 N.W.2d at 873–74; Rule 81.01(a) (noting Minnesota Rules of Civil Procedure apply to tax court proceedings where not inconsistent with tax court procedures). The tax court's partial summary judgment ruling is based on the resolution of a question of law which we review de novo. *See F–D Oil Co., Inc. v. Commissioner of Revenue,* 560 N.W.2d 701, 704 (Minn.1997).

We begin our analysis with the observation that we have recognized the practice of considering the market value impact of both the present value of clean-up costs and the stigma devaluative factor as appropriate considerations in determining the market value of contaminated properties. *See Westling v. County of Mille Lacs,* 543 N.W.2d 91, 93 (Minn.1996) (*Westling II*). In *Westling II,* we affirmed a market valuation of zero based on the estimated cost of clean-up and the stigma discount. *Id.* ·

The county argues however, that Minn. Stat. § 273.11, subd. 17 places a cap on deductions from market value relating to contamination, including the stigma factor, at the cost of a reasonable remediation plan. The county contends that even though the statute does not refer to "stigma," the "presence of contaminants" is defined as "the release or threatened release * * * of contaminants on the property,"[8] Minn.Stat. § 270.92, subd. 5 (1998)–thus because property affected by stigma is subject to the "release or threatened release" of contaminants, Minn.Stat. § 273.11, subd. 17 applies to stigma. The county attempts to provide a coherent application of Minn.Stat. § 273.11, subd. 17 consistent with its argument, contending that the statute should be applied in the following situations: where a taxpayer has not yet begun to implement a response action plan for property affected by stigma, the contamination value should equal the cost of such a plan; after the taxpayer has begun to implement the plan, the contamination value should equal the amount of the remaining clean-up costs plus any market value reduction resulting from stigma up to the total cost of the response action plan; as the plan nears completion, the portion of the deduction attributable to clean-up costs should decrease and the portion attributable to stigma should increase, with the deduction never exceeding the total cost of the response action plan.

The county's argument fails for several reasons. First, a stigma factor can attach to property whether contaminants are present, are threatened, or are totally absent. Where, for example, a property has been successfully remediated leaving no contamination, or is in proximity to property that is contaminated, stigma may nonetheless be present as a heavy burden on the value of the property due to the perception of risk of liability, or government imposed restrictions on the use or transferability of the property, among other concerns. *See* Patchin, *supra.* Second, as the dissent concedes, the plain language of Minn.Stat. § 273.11, subd. 17 is that it applies only to property that is actually contaminated: "In determining the market value of property *containing* contaminants * * *." Because the term "contamination value" is defined as the reduction in mar-

rized, our grant of discretionary review will be cautiously exercised. 609 N.W.2d 868, 873 n. 6 (Minn.2000).

8. Release is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, dis-charging, injecting, escaping, leaching, dumping, or disposing into the environment which occurred at a point in time or which continues to occur." Minn.Stat. § 115B.02, subd. 15 (1998).

ket value resulting from the *presence* of contaminants, it does not include a stigma factor because stigma may attach to property that is not itself contaminated but nevertheless can have a substantial impact in determining the value of uncontaminated property.[9] Third, the county's attempt to rationalize application of the statute under various scenarios is creative but has no basis in the language of Minn.Stat. § 273.11, subd. 17 whatsoever. Fourth, in *Westling II* we recognized the separate bases for reduction in market value based on clean-up costs, on the one hand, and the stigma discount for environmental damage, on the other. 543 N.W.2d at 93. To assume the legislature intended to include stigma in contamination value, which by definition is measured by the cost of clean-up, would inappropriately blur these distinct factors impacting market value.[10]

Although we resolve Dealers' claim based on the plain language of the statute, we also note that the legislative history fails to support the county's position. The statute under review here was enacted in 1993 as part of an article of chapter 375 creating a contamination tax, a tax on the contamination value of taxable real property. *See* Act of May 24, 1993, ch. 375, art. 12, § 1–9, 1993 Minn. Laws 2728, 2941–45, *now codified at* Minn.Stat. §§ 270.91–98; Minn.Stat. § 273.11, subd. 17. In explaining the tax revenue issues that precipitated the legislation, the committee chair referred to *Westling v. County of Mille Lacs,* Nos. C5–92–341, C7–92–342, 1993 WL 35155, at *3 (Minn.Tax Feb.10, 1993), *rev'd* 512 N.W.2d 863 (Minn.1994), where the tax court concluded that two properties that had been assessed at $974,200 had a market value of $100 due to contamination and stigma. Hearing on H.F. 427, H. Comm. on Taxes, 78th Minn. Leg., Mar. 26, 1993 (audio tape) (comments of Chair Rep. Rest). But despite the committee chair's specific reference to *Westling,* there was no suggestion that stigma was to be included in contamination value.[11] We decline to read into the statute a construction that contradicts the plain language of Minn.Stat. § 273.11, subd. 17 and is unsupported by the legislative history.

The argument of the dissent relies heavily on the point that Dealer's property was in fact contaminated and therefore the court should not be concerned with the devaluation effect of stigma on property that is not contaminated. We cannot avoid the issue before the court so simply however, as the sequence of this argument leads to the anomaly that stigma would be capped at the cost of the remediation plan for property that is contaminated, but for property that is not contaminated the stigma factor would be fully taken into account in determining the assessed value. The lack of any rational justification for this

---

9. In Dealers' affidavit of Alan Leirness, MAI, he explained: "Stigma can exist even if contamination is not present on a property, e.g. a property adjacent to the subject site is known to be contaminated or the subject site is one where the contamination has been remediated."

10. The dissent errs in its assertion that our interpretation of the statute renders superfluous language that the contamination value "may not exceed the cost of a reasonable response action plan." Minn.Stat. § 273.11, subd. 17. It is clear that this language effectively limits contamination value to clean-up costs for purposes of computing the contamination tax, *see* Minn.Stat. §§ 270.91–98 (1998), but in no way suggests that properties need not be assessed at a market value that takes into account the effects of stigma.

11. A representative from the Hennepin County Assessor's Office commented as to the difficulties of valuing contaminated property, including property affected by stigma, and the impact of such factors on county tax revenues. *See* Hearing on H.F. 427, H. Comm. on Taxes, 78th Minn. Leg., Mar. 26, 1993 (audio tape). The dissent argues that based on these statements the legislature intended to include stigma in contamination value, but the comments by the representative of the assessor's office in fact support the opposite conclusion. Although clearly aware of the effect of stigma on property tax valuations, the legislature failed to include stigma in enacting the contamination tax provisions.

disparate treatment further underscores the logic of the court's reasoning in concluding that stigma is not included in the contamination value.

Finally, the county's interpretation of Minn.Stat. § 273.11, subd. 17 is inconsistent with Minnesota's property tax scheme that provides that with limited exceptions, all property is to be valued at market value. The county argues that Minn.Stat. § 273.11, subd. 17 is one of those exceptions. We disagree. While it is true that Minn.Stat. § 273.11, subd. 17 creating the concept of contamination value is an exception to the general statutory rule of section 273.11, subd. 1 that "all property shall be valued at its market value," the exception in subdivision 17 permits the *reduction of market value* – nowhere does it authorize a valuation *greater* than the market value which would be the result of failing to account for stigma. Further, consistent with the statutory admonition that the assessor must "consider and give due weight to every element and factor affecting the market value"[12] of the property, section 273.11, subdivision 1 appears to specifically reject the argument of the county in its provision "the assessor shall take into account the effect on the market value of property of environmental factors *in the vicinity of the property*"[13]–a brief but clear recognition that environmental (e.g.contamination) factors affecting market value, although not present on the subject property, are to be taken into account. Stigma would appear to be one of those factors.[14]

We hold that contamination value as defined by Minn.Stat. § 273.11, subd. 17 does not include stigma and therefore Dealers

is entitled to partial summary judgment as a matter of law.

Affirmed.

BLATZ, Chief Justice (dissenting).

I respectfully dissent. The majority holds that Minn.Stat. § 273.11, subd. 17 (1998), does not limit market value reductions for stigma associated with contaminated property. Because the plain language of subdivision 17 contemplates reductions resulting from the presence of contaminants, and stigma is such a reduction, I would reverse the tax court and hold that subdivision 17 limits all such reductions—including stigma—to the cost of cleaning up contaminated property.

Before discussing the merits of the majority decision, however, I must express my concern with the court's consideration of this case at this time. In addition to the inappropriate procedural posture as noted by the majority in footnote 7, there have been no findings of fact as to the amount of stigma associated with the subject property in the contested tax year, or to any of the other value considerations necessary to deciding this case. Amazingly, the record does not even include an estimate of market value for the contaminated property at issue. All we know is that the parties have apparently stipulated that the *unimpaired* market value of the property is $1,336,600, the clean-up costs have been *projected* to be $560,000, and the stigma impact "*could possibly* exceed $500,000." Therefore, we do not know if the stigma value will even exceed the cost of clean-up, a key assumption of fact integral to the majority's reasoning.[1]

12. Minn.Stat. § 273.12.

13. Minn.Stat. § 273.11, subd. 1 (emphasis added).

14. In concluding that contamination value includes stigma, the dissent simply ignores these statutory mandates.

1. This incomplete record and procedural posture contrasts sharply with the record and

procedural posture of the *Westling* line of cases. *See Westling v. County of Mille Lacs*, 581 N.W.2d 815 (Minn.1998) (*Westling III*); *Westling v. County of Mille Lacs*, 543 N.W.2d 91 (Minn.1996) (*Westling II*); *Westling v. County of Mille Lacs*, 512 N.W.2d 863 (Minn. 1994) (*Westling I*). There a full trial on the valuation issue was conducted prior to our review of the valuation of the contaminated property. *See Westling I*, 512 N.W.2d at 865–

If on remand the tax court finds there to be little or no stigma associated with this contaminated property, that finding alone could render the issue before us moot. Thus, what we have before us is, in essence, an advisory opinion, something the "judicial function does not comprehend." *Izaak Walton League of Am. Endowment, Inc. v. State, Dep't of Natural Resources*, 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977). Nonetheless, the court might be well advised to decide the issue presented under the judicial economy exception of *Tarutis v. Commissioner of Revenue*, 393 N.W.2d 667, 669 (Minn.1986), and *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 609 N.W.2d 868, 873–74 n. 6 (Minn.2000), if only to prevent the tax court from proceeding along its present course.

Turning to the issue before us, the majority writes that the plain language of Minn.Stat. § 273.11, subd. 17, is determinative in this controversy. I agree that the language of subdivision 17 is clear. It states:

In determining the market value of property containing contaminants, the assessor shall reduce the market value of the property by the *contamination value* of the property. *The contamination value is the amount of the market value reduction that results from the presence of the contaminants*, but it may not exceed the cost of a reasonable re-

sponse action plan or asbestos abatement plan or management program for the property.

Minn.Stat. § 273.11, subd. 17(a) (emphasis added); *see also* Minn.Stat. § 270.93 (1998). Market value loss due to contamination is caused by several factors such as stigma, liability to the public, and clean-up costs. *See* Peter J. Patchin, *Valuation of Contaminated Properties*, Appraisal J., Jan. 1988, at 11. In other words, stigma is one contributor to market value reduction. Thus while the majority concludes that because stigma is not specifically mentioned in subdivision 17 it must be excluded from that statute, I reach the opposite conclusion. Because the statute does not specifically exclude stigma, it limits the market value reduction—whether it results from stigma or clean-up costs or something else—to the response action plan costs.[2]

The majority's reasoning in support of its interpretation of the plain meaning does not withstand scrutiny. First, the majority assumes that "contamination value" equates to "clean-up costs" just because the legislature chose to limit contamination value to the costs of the response action plan. Subdivision 17 provides that the contamination value "*may not exceed* the cost of a reasonable response action plan." This language would be rendered superfluous if the contamination value was

66. Accordingly, the tax court had heard testimony from experts as to the nature and extent of contamination and the present value of the future costs of clean-up; testimony by Peter J. Patchin, an appraiser for the tax petitioners, that the property had a negative market value based on his opinions as to the unimpaired market value, the loss of value due to stigma, and the clean-up costs; and testimony by the county's appraiser whose opinions of value, unsurprisingly, differed from Patchin's. *See Westling II*, 543 N.W.2d at 93; *Westling I*, 512 N.W.2d at 865–66. Most importantly, the tax court rendered a decision in that matter, including its findings of fact as to the value of the property, based on its findings of fact as to the valuation components. *See Westling II*, 543 N.W.2d at 93.

2. The majority notes that in our 1996 *Westling II*, we affirmed a reduction in the value of a contaminated property to zero based on clean-up costs and a stigma discount. In so noting, the majority implies that this court has previously *not* applied Minn.Stat. § 273.11, subd. 17, to limit a reduction in market value to the costs of a response plan where a stigma reduction was also found. While true, subdivision 17 was not in effect for the tax years in question in *Westling II*. As we stated in our 1998 *Westling III* decision, Minn.Stat. § 273.11, subd. 17, which was enacted in 1993, was effective beginning with 1994 taxes, payable in 1995. The 1996 *Westling II* case involved a tax petitioner's challenge to 1992 and 1993 assessed taxes, payable in 1993 and 1994.

simply the cost to clean-up the contamination. *See* Minn.Stat. § 645.17(2) (1998) (providing that it must be presumed that the legislature intended the "entire statute to be effective and certain"). Rather, this language demonstrates that the legislature contemplated that while clean-up costs might contribute to a reduction in the market value of the property, clean-up costs and contamination value are not synonymous.

The companion contamination tax provisions at Minn.Stat. §§ 270.91–.98 (1998) also contradict the majority's equating of contamination value with clean-up costs. For instance, Minn.Stat. § 270.93 states:

> The contamination value of a parcel of property is the amount of the market value reduction, *if any*, that is granted for general ad valorem property tax purposes for the assessment year because of the presence of contaminants. The contamination value for a property *may be no greater than* the estimated cost of implementing a reasonable response action plan * * *.

In other words, the legislature recognized that a property may not have *any* contamination value due to the presence of contaminants.

In addition, the legislative history leads to the conclusion that stigma is included in the contamination value. The first court decision in Minnesota to apply the concept of stigma was *Westling v. County of Mille Lacs*, Nos. C5–92–341 & C7–92–342, 1993 WL 35155, at *1–3 (Minn. Tax Ct. Feb. 10, 1993), where the value of a property was reduced from nearly $1,000,000 to $100 for tax assessment purposes due to stigma and costs to cure contamination on the property, even though the property generated $144,000 in annual rent for the owners and served as security, in part, for a $1,000,000 mortgage on the property. *See Westling II*, 543 N.W.2d at 92–93. Immediately following the filing of that decision, a bill proposing a contamination tax was introduced in the Minnesota legislature. *See* 1 Journal of the House of Representatives 183, 191 (78th Minn.Leg. Feb. 18, 1993). At the hearings on the bill, the *Westling* case result was noted as the impetus for a contamination tax to recover lost property taxes from productive and valuable, although contaminated, properties. *See* Hearing on H.F. 427, H. Comm. on Taxes, 78th Minn. Leg., Mar. 26, 1993 (audio tape).

The assessors who spoke at the hearings on the bill explained the complications in valuing contaminated property. *See id.* Bob Hanscom, from the Hennepin County Assessor's Office, stated: "It's often difficult to identify the loss in value due to contamination. It isn't necessarily just the cost to clean it up. It's this stigma issue out there * * * ." *Id.* These comments comport with Patchin's description of the loss in value for contaminated properties as caused by various factors, such as stigma and clean-up requirements. *See* Patchin, *supra*, at 11. Accordingly, the legislature's use of the broad language "market value reduction that results from the presence of contaminants" clearly was meant to include stigma.

Finally, while I agree with some of the majority's conclusions, I do not agree that they support the holding that stigma is separate from and independent of contamination value. Like the majority, I conclude that the contamination tax, and thus the contamination value described in Minn. Stat. § 273.11, subd. 17, applies only to property that is actually contaminated.[3] I also agree that it may be possible for stigma to attach to a property whether or not contaminants are present. I do not agree, however, that these must be mutually exclusive conclusions. Simply because stigma may attach to uncontaminated or

---

3. This fact makes the majority's opinion very puzzling. In its effort to bring in uncontaminated property as a justification for reading stigma out of the statute, it ignores the fact that *uncontaminated* property will not have to be cleaned up and is not subject to the contamination tax.

formerly contaminated properties does not mean that stigma was not included in this legislative response to the valuation of *contaminated* properties.[4] In fact, to read stigma out of the statute is to unnecessarily limit the definition of contamination value and to ignore the context within which the statute was adopted.

Critically, the issue before us is the application of subdivision 17 to a *contaminated* property which is subject to a response action plan and which may be affected by stigma—not the applicability of that statute or of stigma to uncontaminated or formerly contaminated properties. Given that this is the central issue, it is critical to focus on the fact that in the case before us we have a contaminated property on the Superfund list. It is a property for which we do not know the market value, the stigma value, or the actual clean-up costs. Nonetheless, the majority has decided that a reduction in its value caused by an unknown stigma is not capped by the cost of the estimates of the response plan costs. Although that holding is advisory in and of itself, the majority then goes on to decide that for uncontaminated property, value

may be reduced for stigma. These facts are not before us.[5]

In addition to holding that contamination value includes stigma, I would hold that Minn.Stat. § 273.11, subd. 17, does not violate the Uniformity Clause of the Minnesota Constitution nor the Equal Protection Clause of the United States Constitution. These issues, as well as a claim that the tax was a governmental taking, were decided by *Westling v. County of Mille Lacs*, 581 N.W.2d 815 (1998) (*Westling III*). In *Westling III*, we held that the contamination tax provisions at Minn. Stat. §§ 270.91–98, which accompanied Minn.Stat. § 273.11, subd. 17, in the 1993 bill, are constitutional. ·See *Westling III*, 581 N.W.2d at 823–24. Although we did not expressly refer to Minn.Stat. § 273.11, subd. 17, that provision is clearly encompassed by the decision. First, the contamination tax is applied to the " 'market value reduction, if any, that is granted for general ad valorem property tax purposes * * * because of the presence of contaminants.' " *Westling III*, 581 N.W.2d at 818 (quoting Minn.Stat. § 270.93). Second, we recog-

4. The majority's statement that there is no "rational justification" for permitting uncontaminated properties, but not contaminated properties, to deduct for stigma is not supported by the law. First, subdivision 17 does not preclude all deductions for stigma; it just limits reductions in value for this difficult to define factor to the costs of a response action plan. More importantly, this assertion ignores our recent precedent in *Westling III*. In upholding the contamination tax scheme in *Westling III*, we held that there *is* a rational basis for treating contaminated and uncontaminated properties differently. *See Westling III*, 581 N.W.2d at 821. Among the reasons identified were that contaminated property may result in increased health risks and contributes to community blight and economic distress. *See id.* at 821. "Contaminated property thereby poses a greater burden on society than uncontaminated property." *Id.* As we said in *Westling III*, "the presence of environmental contamination, along with the extent of responsibility for clean up, are genuine and rational bases" for treating contaminated and uncontaminated properties differently. *Id.*

5. The majority also points to Minn.Stat. § 273.11, subd. 1 (1998), in support of its holding. Subdivision 1 provides that the "assessor shall take into account the effect on the market value of the property of environmental factors in the vicinity of the property." Minn. Stat. § 273.11, subd. 1. The majority cites this statutory provision as support for its conclusion that "environmental (e.g.contamination) factors affecting market value, although not present on the subject property, are to be taken into account." Again the majority's reach is beyond the scope of the issues before us. This case is about a contaminated property—not an uncontaminated property in proximity to other contaminated properties. Further, the statutes at issue are expressly concerned with environmental factors in that they recognize the effects of contamination on property values and set forth a framework to assess and tax the properties accordingly. Finally, even if subdivisions 1 and 17 of Minn. Stat. § 273.11 are in conflict, and I do not believe they are, subdivision 17 is the more specific and most recently enacted and would be applied to the subject property. *See* Minn. Stat. § 645. 26, subds. 1, 4 (1998).

nized that the contamination tax "applies only to property that has been reduced in assessed value due to the presence of environmental contamination." *Westling III*, 581 N.W.2d at 821. Finally, after concluding that the contamination tax violated neither the Uniformity Clause of the Minnesota Constitution nor the Equal Protection Clause of the U.S. Constitution, we held that Westling's argument that "the imposition of a contamination tax in excess of the value of their property constitutes a governmental taking without compensation, is * * * without merit." *Id.* at 822. Thus, because these constitutional arguments were made and decided by us in *Westling*, there is no need to revisit them here.

Given the record before us and our clear precedent, I would spurn the respondent's invitation to unravel the statutes and our precedent interpreting it. Accordingly, I would reverse the tax court's grant of partial summary judgment and remand for further proceedings.

PAGE, J.

I join in the dissent of Chief Justice Blatz.

PAUL H. ANDERSON, J.

I join in the dissent of Chief Justice Blatz.